**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                                                                                          NO. 3:07-CR-83-S

RUSSELL EUGENE CARVER III                                                                 DEFENDANT

## REPORT AND RECOMMENDATION

This matter is before the court on the motion of the defendant, Russell Eugene Carver III, to suppress evidence seized in a warrantless search of a vehicle. The court referred this matter to the United States Magistrate Judge James D. Moyer for consideration and preparation of proposed findings of fact, conclusions of law and recommendations pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). The magistrate judge presided over an evidentiary hearing during which the government offered testimony from a single witness, Sgt. Jamie Hill, Louisville Metro Police Department. Following a review of his testimony and the argument of counsel, the magistrate judge concludes probable cause supported the undercover officers' conduct and that no violation of the defendant's Fourth Amendment rights occurred. The magistrate judge will therefore recommend denying the motion to suppress.

### I. FINDINGS OF FACT

1) Sgt. Jamie Hill, a fifteen-year veteran of the police department, testified to the following events.[1] On June 28, 2006, at around 4:00 p.m., Sgt. Hill and three other officers participated in an undercover investigation of complaints of prostitution in the Dixie Highway area of Jefferson County, Kentucky. Two female officers posed as prostitutes near the intersection of Flintlock

---

[1] Transcript of Suppression Hearing, April 2, 2008 (docket no. 22) (hereinafter "Tr.").

Drive and Milner Avenue. One female officer, Sgt. Melinda Zirnheld, was equipped with a "body wire" which mainly transmitted her own voice. The other two officers, Sgt. Hill and Officer Terry Compton, both received the audio transmission as they waited approximately 200 yards away in an unmarked vehicle in a Kroger parking lot near the intersection. The four officers were so positioned for their safety. This allowed the female officers posing as prostitutes to arrange to meet with a suspect in the nearby Kroger parking lot, rather than enter a suspect's vehicle.[2]

2) In due course, Sgt. Zirnheld described over the wire transmission a small burgundy car (a Ford or Mercury) occupied by two females and a male "and said that the front right passenger, the male subject in the car, was trying to sell them crack cocaine."[3] Sgt. Zirnheld also reportedly said the male subject, later identified as the defendant Russell Carver, "reached down between his feet as if to grab something, and ... acted like he was getting ready to sell it to us and then he got nervous and pulled off."[4] She also reported the defendant told Sgt. Zirnheld to meet him a parking lot of an apartment complex directly across the street.[5]

3) Within seconds the car came within Sgt. Hill's sight.[6] In short sequence, the car came to a stop at the apartment building, the rear passenger exited and ran up the steps of the apartment building, and the unmarked police vehicle pulled behind the car (more to the right rear). Sgt. Hill quickly concluded the woman was not running from the police and was unaware of their

---

[2] Tr. 6-8, 9, 10.
[3] Tr. 8, 10.
[4] Tr. 15.
[5] Tr. 11.
[6] Tr. 10.

presence.[7]

4) Sgt. Hill testified, "So we jumped out, said 'police.' As soon as I say 'police,' [the defendant] ... laid over in the seat into the lap of the driver. At that time, I unholstered my weapon for fear of where his hands were going. He threw his left hand up in the air as he is laying on his left side. It was a very awkward position for him to put his left hand up in the air, but his right hand he wouldn't show us. We were actually in fear of the fact that maybe he had a weapon."[8]

5) Despite repeated verbal commands to show his hand, the defendant failed to comply. Sgt. Hill further explained that "as soon as I said police, he laid over on his left side into the driver's lap, and she was a very large female, and she – it was a smaller car, and she really couldn't move out of his way or anything. He laid over kind of in her lap. And it was strange because he was laying on his left side as he was doing that, and he had his left arm up like this. And the thought that was coming to my head is if this guy is right-handed, he very well could have a gun concealed there, and if I walk up to the passenger side, which was the original side I was on, then if he was hiding a weapon, I would be walking right into the field of fire there. I couldn't see that right hand. It was very – you know, in all my years of law enforcement, that was a very odd scenario with which hand was up. Since he was laying on his left side, you would expect the right hand to come up and not the left."[9]

6) The female driver soon complied with the officers' instructions to get out of the car. While still giving loud verbal commands to the defendant, the officers handcuffed the defendant

---

[7]Tr. 12.
[8]Tr. 12-13, 23-24.
[9]Tr. 13-14.

in the odd position he was in and then removed him from the car.[10] The defendant was searched. In short order, both women were in handcuffs and seated at the curb near the front bumper of the car.[11] The entire encounter lasted only minutes.[12]

    7) After removing the defendant from the car, Sgt. Hill observed a very small, blue, child's backpack placed in front of the gas pedal. Sgt. Hill unzipped the backpack and found a .357 caliber revolver (loaded) and three envelopes containing crack cocaine of various amounts.[13] The defendant was then formally arrested.

    8) On cross-examination, the defense established that the defendant's exact words to Sgt. Zirnheld were that he "could hook her up" and that prior to the seizure of the backpack, no officer observed or detected illegal drugs or weapons in the car, or for that matter, in the possession of its passengers from pat-down searches.[14]

    9) Sgt. Hill testified that according to the uniform citation, they charged the defendant with first-degree trafficking of crack cocaine, possession of a firearm by a convicted felon, and carrying a deadly weapon.[15] In this federal proceeding, the defendant is charged with violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 922(g)(1), 924(c), and 924(d).

---

[10] Tr. 13.

[11] Tr. 25-26.

[12] Tr. 16.

[13] Tr. 14-15. In describing the child's backpack, Sgt. Hill stated, "It's just inches by inches ... not one ... you can put a bunch of books in."

[14] Tr. 22.

[15] Tr. 19-20.

## II.  CONCLUSIONS OF LAW

10)     The defendant moves to suppress the contents of the small backpack seized from the vehicle.  The defendant emphasizes he was formally arrested and charged only after police opened the backpack to reveal its contents and that at no time prior to the seizure did officers have probable cause to search the vehicle.  He also disputes the contention that officers had a reasonable suspicion to stop the vehicle and conduct an investigatory search of his person or the vehicle and further argues that, in any event, the officers exceeded the scope of a permissible *Terry* stop by searching the vehicle for evidence of a crime after the defendant was in custody.[16] The government argues no Fourth Amendment violation occurred under any theory of the case – a *Terry* stop and search of vehicle, probable cause to arrest, search-incident-to-arrest, search under the vehicle exception, etc.  After thorough consideration, the magistrate judge concludes the primary issue is whether police acted with probable cause, regardless whether *Terry* supports some or all of the officers' conduct.[17]

11)     The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."  U.S. CONST. amend. IV.  Warrantless searches and seizures are *per se* unreasonable unless the government can show a valid exception to the warrant requirement.  *United States v.*

---

[16]*Terry v. Ohio*, 392 U.S. 1 (1968).  "The *Terry* doctrine applies to investigative stops of moving automobiles ... and is permissible when it is based upon 'specific and articulable facts, which taken together with rational inferences from those facts,' give rise to a reasonable suspicion that the individual is, was, or is about to be engaged in criminal activity ... ."  *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000).

[17]*See* fn. 18 *infra*.

*Ross*, 456 U.S. 798, 824-25 (1982).

12) An arrest without a warrant is reasonable if there is probable cause to believe a person has violated or is violating the law. *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004); *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotations and citation omitted); *see also United States v. Romero*, 452 F.3d 610, 616 (6th Cir. 2006) (describing the court's inquiry as a "totality-of-the-circumstances approach"). Probable cause means an officer must show more than mere suspicion, although the quantum of evidence need not establish a *prima facie* case at trial, much less guilt beyond a reasonable doubt. *Strickland*, 144 F.3d at 416. Nonetheless, the belief of guilt must be specific to the person to be searched or seized. *Pringle*, 540 U.S. at 371.

13) A vehicle search also falls within a recognized exception to the Fourth Amendment's warrant requirement. *California v. Carney*, 471 U.S. 386, 390-91 (1985). "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). If there is probable cause to search a vehicle for illegal drugs, then police may conduct a warrantless search of all parts including closed containers. *Ross*, 456 U.S. at 825; *California v. Acevedo*, 500 U.S. 565 (1991).

14) The magistrate judge concludes that under a totality of the circumstances, probable cause existed to believe the defendant was trafficking illegal drugs and that probable cause to

arrest arose at the outset of Sgt. Hill's approach of the parked vehicle, if not earlier. According to Sgt. Hill's testimony, the officers knew that the defendant: 1) stopped the vehicle to address Sgt. Zirnheld and the other undercover female officer; 2) in his own words, communicated an offer to sell crack cocaine to them; 3) reached down between his legs, while seated in the vehicle, as if to grab something; 4) appeared nervous and directed Sgt. Zirnheld to meet him in the nearby parking lot; 5) stopped the vehicle in the parking lot. Under a probable cause standard, these circumstances would lead an objectively reasonable officer to conclude the defendant was trafficking illegal drugs. Even more indicative of probable cause is that 6) the defendant responded to police presence by lowering and hiding his right hand in the vehicle, a decidedly unusual posture indicative of suspicious activity and consistent with the other indicia of illegal behavior.

15) The defense argues this scenario should be analyzed as a *Terry* stop because Sgt. Hill believed he was acting under a reasonable suspicion to stop the vehicle and to search for evidence of illegal drugs.[18] The defense emphasizes, again, that officers did not immediately arrest the defendant but first searched the vehicle for evidence of a crime. The officer's reliance on *Terry*, however, does not curtail a judicial determination whether the officer's conduct was objectively reasonable under the Fourth Amendment. Even if Sgt. Hill doubted probable cause existed before he approached the vehicle, his "state of mind ... is irrelevant to the existence of

---

[18]The defense argues the officers lacked reasonable suspicion to conduct a *Terry* stop for the same reasons he argues officers lacked probable cause. More significant, the defense further argues officers illegally searched the vehicle because the defendant and the other passengers were in custody, in handcuffs, out of reach of the vehicle and thus no threat to the officers' safety. The Court of Appeals for the Sixth Circuit, however, has apparently taken an expansive view of dicta in *Michigan v. Long*, 463 U.S. 1032 (1983), and stated that a search of a vehicle is permissible even when a suspect is already under control of officers, in part because "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." *Boone v. Spurgess*, 385 F.3d 923, 929 (2004) (arrestee's civil rights action) (quoting *Long*, 432 U.S. at 1051-52).

probable cause." *Devenpeck*, 543 U.S. at 153. Rather, "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Id*. Again, the quantum of evidence required under the "probable cause" test can be described as providing "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006). After hearing the evidence, the magistrate judge believes all the circumstances support the reasonable conclusion that probable cause to arrest for illegal drug activity existed at the time Sgt. Hill approached the vehicle.

16) The defense also takes issue with the failure of Sgt. Zirnheld to testify at the evidentiary hearing and argues essentially that the government has failed to carry its burden of proof. The defense argues that, because Sgt. Hill testified to second-hand information regarding the encounter between Sgt. Zirnheld and the defendant, his testimony is less reliable and deserves less weight in the magistrate judge's findings of fact. Sgt. Hill conceded on cross-examination that the defendant used the words "could hook her up" which suggests, in the defense view, there was no explicit offer to sell cocaine nor particularly suspicious or guilty behavior.[19] The magistrate judge disagrees.

17) First, information from a fellow officer is presumptively reliable and is not susceptible to the same scrutiny as a confidential police informant. *See United States v. Ventresca*, 380 U.S. 102 (1965); *see also* WAYNE R. LAFAVE, 2 SEARCH & SEIZURE § 3.5(a) (4th ed. 2008). Because Sgt. Zirnheld believed the defendant's words communicated an offer to sell cocaine and transmitted this by wire to Sgt. Hill during the undercover investigation, as Sgt. Hill

---

[19]See www.urbandictionary.com for some unofficial definitions of "hook up," which generally has a sexual connotation according to the web site users.

testified, the magistrate judge considers such information to be reliable and the proper and credible subject of Sgt. Hill's testimony. Experienced police officers believed the defendant was engaged in a drug transaction and the magistrate judge will not second guess their interpretation of street language and the overall context of the encounter.

18) Second, "probable cause requires only a probability or substantial chance of criminal activity" rather than an actual showing of criminal conduct; thus, in "making a determination of probable cause, the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." *Illinois v. Gates*, 462 U.S. 213, 245 n. 13 (1983) (observing that "innocent behavior frequently will provide the basis for a showing of probable cause"). Here, the government carried its burden of proof with the testimony of Sgt. Hill and adequately demonstrated that the defendant's words and conduct were sufficiently suspicious that when taken together provide reasonable grounds for belief the defendant was trafficking cocaine.

19) Just as the totality of the circumstances provided probable cause to arrest the defendant at the time officers approached the vehicle, there was also probable cause to conduct a warrantless search of the vehicle, and particularly the space accessible to his hidden, right hand, under the vehicle exception to the warrant requirement. Given Sgt. Zirnheld's encounter, the officers reasonably believed the defendant was trafficking cocaine with the use of the vehicle. Probable cause from these circumstances were compounded by the defendant's response when police announced their presence. The defendant's odd position and refusal to show his right hand signaled reasonable grounds for concluding the defendant possessed either illegal drugs, a weapon (as is frequently the case in drug trafficking, *United States v. Heath*, 259 F.3d 522, 530

(6th Cir. 2001)), or both.

### III. RECOMMENDATION

A totality of the circumstances persuades the magistrate judge to conclude probable cause supported the officer's conduct and the subsequent search of the vehicle which yielded evidence of both weapons and drug violations. Accordingly, the magistrate judge will recommend denying the defendant's motion to suppress.

DATE:

### NOTICE

Within ten (10) days after being served a copy of these proposed findings of fact, conclusions of law, and recommendation, any party who wishes to object must file and serve written objections, or further appeal is waived. *Thomas v. Arn*, 782 F.2d 813 (6th Cir. 1984); 28 U.S.C. § 636(b)(1)(C)). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof.

Copies to: Counsel of Record