UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                      PLAINTIFF

v.                                          CRIMINAL ACTION NO. 3:07CR-83-S

RUSSELL EUGENE CARVER III                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court for consideration of the objections of the defendant, Russell Eugene Carver III, to the Report and Recommendation of the United States Magistrate Judge (DN 29) that Carver's motion to suppress evidence be denied.

The magistrate judge heard evidence from one witness offered by the United States, Sgt. Jamie Hill of the Louisville Metro Police Department.  Based upon that evidence, the magistrate judge concluded that there had been no violation of Carver's Fourth Amendment rights as a result of the warrantless search and seizure of items from the vehicle in which Carver had been a passenger.

Testimony concerning the pertinent events established the following:

Sgt. Hill and three other officers were conducting an undercover investigation of alleged prostitution on the day in question.  Two female officers posed as prostitutes.  One of the female officers, Sgt. Zirnheld, was wearing a "body wire" to maintain audio contact with Sgt. Hill and Officer Compton who were parked out of sight in a Kroger parking lot in an unmarked police vehicle.  They were approximately 200 yards away from the female officers.

Sgt. Zirnheld informed Sgt. Hill and Officer Compton that a small, burgundy car had pulled up and a male passenger sitting in the front passenger seat, later identified as Carver, was trying to sell the officers crack cocaine.  She described the vehicle occupants as a large black female driving

the vehicle, a black male who had offered her the cocaine in the passenger seat, and a white female in the back seat.  Sgt. Zirnheld stated that Carver had reached down between his feet as if to grab something, and acted as if he was going to sell the crack to them, but then got nervous, told her to meet him in a nearby parking lot, and pulled off.

Within seconds of the communication from Sgt. Zirnheld, Sgt. Hill and Officer Compton saw the vehicle and followed it into the parking lot of an apartment complex where the vehicle stopped. The officers stopped their vehicle behind but off to the right side of the burgundy vehicle.  The female passenger got out of the vehicle and went up a flight of steps.  The officers exited their vehicle and announced "police."  Carver then leaned over the seat to his left into the lap of the driver.  Sgt. Hill unholstered his weapon.  Carver put his left hand in the air, but not his right.  The officers feared at that point that he might have a weapon.  They ordered the driver out of the car and she complied.  Sgt. Hill then held Carver at gunpoint from the driver's side of the vehicle and gave him loud commands to display both of his hands.  When he could see both of his hands, Sgt. Hill handcuffed Carver where he lay across the seats, then removed him from the vehicle.

Sgt. Hill found it strange that Carver had lain on his left side with his left hand in the air, rather than his right.  It was an awkward position to be in, which made Sgt. Hill wonder if Carver was right handed and had or was trying to reach a gun.   While in the passenger compartment of the vehicle, Sgt. Hill saw a small, blue child's backpack on the floorboard in front of the gas pedal.  He opened the backpack and inside found a loaded .357 revolver and three envelopes of crack cocaine.

As an initial matter, we note that the "objections" to the magistrate judge's findings and conclusions consist of two sentences which state nothing more than that Carver objects "on the grounds set forth in the defendant's [post-hearing/pre-ruling] memorandum of law."  Under the law of this Circuit, this constitutes a general objection to the entirety of the magistrate's report which has the same effect as would a failure to object.  *See, Howard v. Secretary of Health and Human Services*, 932 F.2d 505 (6th Cir. 1991); *Neuman v. Rivers*, 125 F.3d 315 (6th Cir. 1997); *King v.*

*Caruso*, 542 F.Supp.2d 703 (E.D.Mich. 2008); *Ayers v. Bradshaw*, 2008 WL 906100 (N.D.Ohio,

March 31, 2008)(unpubl.).   However, at least one panel of the Sixth Circuit has found that the

requirement for specific objections to a magistrate judge's report is not jurisdictional and that a

failure to comply may be excused in the interest of justice.  *Kelly v. Withrow*, 25 F.3d 363 (6th Cir.

1994).  The court stated in *Kelly* that:

> we do not pronounce a general rule that every attempt to incorporate other
> documents by reference in lieu of spelling out specific objections to a magistrate's
> report will suffice.  The circumstances of this case–in particular, the district judge's
> acknowledgment that he was able to understand and review the specific
> determinations of the magistrate objected to by the petitioner—lead us to conclude
> that we should consider the merits of this appeal.  We caution the attorneys of this
> circuit that a concise statement of specific holdings of the magistrate judge to which
> exception is taken is the preferred and safer course.

*Kelly*, 25 F.3d at 366.

The court has reviewed the post-hearing memoranda filed by the parties, the transcript of

evidence, and has conducted a *de novo* review of the Report and Recommendation of the magistrate

judge.  This court finds no error in the report.

The issue raised by Carver is whether the officers lawfully seized and searched the child's

backpack found on the front floorboard of the vehicle after the occupants were removed.  The United

States contends that Carver was arrested and that the search of the backpack was a lawful part of the

search of the vehicle incident to a valid arrest.  Carver contends that he was taken into custody but

was not arrested when he was removed from the vehicle.  He contends that, in fact, the officers did

not have probable cause to arrest him until after the backpack was searched and drugs and a revolver

were discovered.  Therefore, Carver seeks suppression of the evidence on the ground that the items

were thus not seized pursuant to a lawful arrest.

Carver states that he was taken into custody from the vehicle on the mere suspicion that he

was engaged in drug activity and that he was not arrested at that time.  He bases this argument on

the fact that Sgt. Hill testified at the suppression hearing that he had a "reasonable suspicion" that

Carver was trying to sell crack cocaine and that "Our [he and the other officer's] intention was to take custody of him and see if he had any crack cocaine." TR. 15-16. We do not find that the testimony regarding the officers' initial thought processes about an encounter with Carver which had not yet occurred are in any way determinative of whether Carver was arrested when he was removed from the vehicle. As noted in *Devenpeck v. Alford*, 543 U.S. 588, 155, 125 S.Ct. 588, 594, 160 L.Ed.2d 537 (2004), a case cited by the magistrate judge in his report, "Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest." Sgt. Hill was never asked whether he had "placed Carver under arrest" at the time he removed him at gunpoint from the vehicle, handcuffed him, and removed him from the immediate vicinity of the vehicle. We think that such action quite clearly amounted to a Fourth Amendment seizure as, under the circumstances, a reasonable person would have believed he was not free to leave. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), *quoting, U.S. v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), (and noting that the subjective intent of the officer was not relevant); *Peters v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)(Harlan, J. concurring). As the encounter developed, the officers' initial thoughts about what might occur were rapidly replaced with what actually occurred.

Carver also urges that the following testimony from the suppression hearing indicates that the arrest occurred after the search of the backpack:

> Q [defense counsel]: According to the uniform citation, Mr. Carver was charged with trafficking first offense. That's for the crack cocaine in the bag?
>
> A [Sgt. Hill]: First degree, yes, sir.
>
> Q: Excuse me.
>
> A: Yes, sir.
>
> Q: PFABCF. Possession of a firearm by a convicted felon. Is that correct?

A: Yes, sir.

Q: That's for the gun that was in the bag?

A: Yes, sir.

Q: Okay. And it appears those were the only charges lodged against him that day?

A: Yes, sir.

TR. 19-20. The above-quoted series of questions and answers establishes only that Carver was formally charged with two crimes relating to items of contraband found in the vehicle. The testimony does not suggest that Carver's arrest occurred after the backpack was searched.

However, the magistrate judge did not find the precise time at which Carver was arrested, as the law does not require such a finding under these facts. The magistrate judge found that probable cause existed to arrest Carver at the time that Sgt. Hill first approached the vehicle. That is all that is required in order to conclude that the later search of the backpack, found on the floorboard of the vehicle, was a permissible search incident to a valid arrest.

Justice Harlan's concurrence in *Peters, supra*, is illustrative:

In the course of upholding Peters' conviction, the Court makes two...points that may lead to future confusion.[1] The first concerns the "moment of arrest." If there is an escalating encounter between a policeman and a citizen, beginning perhaps with a friendly conversation but ending in imprisonment, and if evidence is developing during that encounter, it may be important to identify the moment of arrest, i.e., the moment when the policeman was not permitted to proceed further unless he by then had probable cause. This moment-of-arrest problem is not, on the Court's premises, in any way involved in this case: this Court holds that Officer Lasky had probable cause to arrest at the moment he caught Peters, and hence probable cause clearly preceded anything that might be thought an arrest. The Court implies, however, that although there is no problem about whether the arrest of Peters occurred *late* enough, i.e., after probable cause developed, there might be a problem about whether it occurred *early* enough, ie., before Peters was searched. This seems to me a false problem. Of course, the fruits of a search may not be used to justify an arrest to which it is incident, but this means only that probable cause to arrest must precede the search...[A]s demonstrated by *Terry*, not every curtailment of freedom of movement is an "arrest" requiring antecedent probable cause. At the same time, an

[1]Only the first point is of interest here.

- 5 -

officer who does have probable cause may of course seize and search immediately. Hence while certain police actions will undoubtedly turn an encounter into an arrest requiring antecedent probable cause, the prosecution must be able to date the arrest as *early* as it chooses following the development of probable cause.

*Peters*, 392 U.S. at 76.

The magistrate judge's findings of fact, rendered after observing the witness and hearing the testimony, are entitled to some deference. In reviewing his findings, we conclude that his findings are fully supported by record evidence. In our *de novo* review[2], our reading of the cold record supports our own conclusion that probable cause to arrest Carver existed at the time Sgt. Hill first approached the vehicle.

Sgt. Zirnheld's presumptively reliable information to Sgt. Hill was that:

1. She and the other undercover officer had just been offered a sale of crack cocaine;

2. The seller appeared to her be prepared to complete the transaction;

3. Instead of completing the sale on the street, the seller instructed her to meet him in a nearby parking lot.

In possession of this information along with a description of the vehicle and its occupants and its location, Sgt. Hill followed the vehicle and observed it stop in the parking lot indicated by Sgt. Zirnheld. Sgt. Hill had probable cause to believe that a crime had been or was about to be committed, as the individual in the vehicle had attempted to sell an undercover officer cocaine on the street, and had then proceeded to the location where he apparently sought to complete the transaction.

In addition to the information already possessed by Sgt. Hill, he found that when he identified himself as a police officer, the individual acted suspiciously, and appeared to Sgt. Hill to be either attempting to conceal or retrieve something inside the vehicle. In his experience, Sgt. Hill

---

[2]We have performed a *de novo* review of the factual findings only because we have no specific objections lodged by the defendant. We have therefore looked at the record with a fresh eye, in addition to considering whether there is clear error in the magistrate judge's findings of fact. We find that both analyses yield the same result in this case.

believed that Carver's actions were indicative of either trying to conceal contraband or to conceal or retrieve a weapon near the floor of the vehicle.  The events leading up to the arrest, viewed from the standpoint of an objectively reasonable officer, amounted to probable cause.  *United States v. Romero*, 452 F.3d 610 (6th Cir. 2006).  As probable cause existed for the arrest of Carver when he was removed from the vehicle, a search of the vehicle incident to arrest was lawful.  *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

Based upon the foregoing analysis, and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that, upon *de novo* review of the Report and Recommendation of the United States Magistrate Judge, the court finds no error in fact or law and the Report and Recommendation will be **ACCEPTED AND ADOPTED IN ITS ENTIRETY.**

**IT IS SO ORDERED.**